Hey Police Department, my name is Danielle Aquilino and I represent the United States Equal Employment Opportunity Commission. If I may, I'd like to request that you reserve five minutes for rebuttal. The Commission requests that this Court reverse the District Court's Entry Summary Judgment on the EEOC's two claims, one, a hostile work environment based on sexual harassment, and two, a pregnancy discrimination claim as to Deanna Saez. The Commission also requests that this Court hold that the District Court abuse its discretion in awarding attorney's fees against the Commission. With the Court's permission, I'd like to focus on the merits of our case today and, time permitting, I'd like to briefly discuss why, even if this Court affirms the District Court's decision on the merits, the District Court abused its discretion in awarding $363,000 in attorney's fees in a case where the District Court itself characterized the harasser's conduct here as offensive and reprehensible and found that as to three of the victims, it was not frivolous and reasonable without foundation. Turning to the hostile work environment claim, contrary to the District Court's finding, the Commission's evidence here raised a jury question as to whether the harassment was sufficiently severe or pervasive to alter the terms of the employment of the victims, especially where the harassment here was perpetuated not just by a co-worker or a supervisor or even the managing attorney in the firm, but by the senior partner and sole proprietor, Reeves & Associates. Here, all of the victims and some of Reeves & Associates' own witnesses testified that Reeves made inappropriate sexual comments and three of the victims testified that he either did so frequently or on a daily basis. Three of the victims also testified that Mr. Reeves touched them inappropriately at least once and all of the victims testified that Mr. Reeves frequently stared or leered at them with looks that they characterized as head-to-toe or up-and-down, while the fifth victim, Ms. Wilkerson, testified that Reeves frequently commented about her appearance, telling her to wear tight shirts two to twenty times and that she should wear more revealing clothes and also that she should wear shorter skirts to show off her legs. Each of the victims testified to feeling uncomfortable with Reeves. Four of them testified that they tried to avoid him, and two of them, Jacobson and Liao, testified that they quit in part because of the harassment. In addition, Jacobson said she was afraid of Mr. Reeves, that she twice went home crying after hearing his dirty jokes. Wilkerson testified that working at Reeves & Associates was, quote, hell, that Reeves' comments about her clothing made her feel sexually demeaned, but, like Jacobson, she was afraid to complain to Mr. Reeves because he was the boss. This evidence was enough to create a jury question under this Court's holding in Burrell v. Star Nursery. In that case, which is the case the Commission cited below in response to both of the summary judgment motions on our hostile work environment claim, this Court held that there is a genuine issue of material fact where the plaintiff complained that her harasser, who was her supervisor, that his conduct fell into three categories. One, he made comments to her containing sexual references. Two, he said he wanted to take a trip to the mountains with her. And three, he commented about how she looked and how, quote, well built she was. The harassment here is at least as egregious as that alleged in Burrell, and with respect to many of the victims, it was really much worse. This is especially true considering the fact that, in contrast to Burrell, the harasser here was the employer, and all the victims had to work with him on a daily basis. And these are facts that the District Court overlooked in assessing the hostility of the environment. Here, as I said, Ries wasn't just another attorney, but the senior partner and sole shareholder who had all of the hiring and firing power, all of the power to promote and demote these women, and all of the victims had to work with him every day. The Commission's position here is supported by a Beda v. Transamerica, where the Court reversed summary judgment and held that a jury could consider that all the statements at issue were made by the President of Transamerica and that the plaintiff worked with him on a daily basis. This is also in accord with the District Court's opinion in Heller v. Columbia-Edgewater Country Club, where the Court said that an aggravating factor here is that the plaintiff was young, just 23 years old when hired, and the harassment was at the hands of a supposedly mature executive who had direct authority over her. And although the victims do not remember each dirty joke or sexually inappropriate comment, each victim remembers the details that released some of the jokes and comments, which would enable a jury to determine whether there was a hostile work environment. The Commission's position here is also supported by a Beda and the Seventh Circuit decision Day v. Polk Construction. In a Beda, the Sixth Circuit reversed summary judgment on similar facts where the plaintiff testified that her harassers' comments were ongoing, commonplace, and frequent, but she was unable to recall the details of many of the comments and could only remember a few, and only one of those comments was actually about her. But there the Court held that her inability to recall any more specifics of the jokes or comments went to the weight of her testimony, which is a matter for the finder of facts. Similarly, in Day v. Polk Construction, the Seventh Circuit rejected the argument that the plaintiff's hostile work environment claim was limited to only those comments that she could remember, where she claimed that she remembered five specific incidents  that she claimed was gestures, comments, sexual innuendo. While the Court said that the case would have been stronger if she had been able to remember more of it, it found that what she did recall supported her claim of harassment. Here, each victim recalled specific comments or jokes. Jacobson, for instance, recalled that she went into Reeves' office asking for Advil and he pulled condoms out of his desk drawer and said, Do you know that my son calls these Kennedy's? Or that he made a joke about cigars saying not for vaginal use and a comment about the conference room table that they were trying to select, wouldn't that be great to have sex on? Liao recalled that Reeves made daily dirty jokes after Viagra came out and that they included references to penises, interruptions, and sexual potency. She also recalled that he made a joke at an attorney meeting where he commented about a golfer with a fax coming out of his penis and something else coming out of his ass. Wilkerson recalled Reeves saying she gives good head, which she thought was a reference to a woman named Lisa Chang who would come and visit Reeves during office hours and emerge from his office with messed up lipstick and clothes that were out of place. Caturia recalled Reeves asking a male attorney if anything sexual had happened on the date that he had set up the night before and that a co-worker had said that Reeves said to her while staring at her chest, You look healthy today. Preciado also recalled one of Reeves' dirty jokes, which was something about Santa Claus coming down the chimney and Mrs. Claus waiting at the bottom and him saying something like, Ho, ho, ho. She also heard about the Jacobson comment about the sex on the conferencing table. So that is our claim as to a hostile work environment and why we ask this Court to reverse the District Court's entry of summary judgment. As to the pregnancy claim, as this Court said in Aragon v. Republic Silver State Disposal, the amount of proof needed to establish a prima facie case is minimal and does not even rise to the level of preponderance of the evidence. Because the Commission's evidence met this minimal standard and because the District Court erred in conflating the minimal evidence needed for a prima facie case with that to establish pretext, the Commission contends that our evidence was enough for a prima facie case. As to qualified, Reeves and Associates hasn't disputed that nothing in Sayez's personnel file documents any performance problems or there are any kind of warnings in there. She also testified that she did all of her tasks and that she doesn't remember ever being criticized, and that's what she also said in her declaration that the Commission submitted. Jenny Lattman, the death supervisor, called Sayez a good worker and under Aragon the Commission contends that this was enough to establish that prong. The Commission's evidence as to an inference of discrimination, the fourth prong, was also sufficient. The Commission offered evidence that Sayez recalled that she disclosed her pregnancy in early 1997, that she was terminated on February 10, 1997, shortly after she disclosed her pregnancy, so there's a short time period there. There was no event that precipitated her abrupt termination, and the Commission offered evidence casting doubt on Reeves and Associates' claim about how it hired her for only a short time to pay off her attorney's fees. Therefore, we think that this evidence was enough and that the district court erred by accepting Reeves and Associates' claim about why it had fired her at the prima facie stage and used that to defeat her prima facie case. But the Commission also contends that we offered enough evidence to establish pretext, a genuine issue of material fact as to pretext. Based on the evidence just discussed and that the Commission offered evidence refuting each of what we contend are the three shifting reasons for why it let Ms. Sayez go. As for attorney's fees, the Commission's position is that we raise a tribal issue of fact with respect to our hostile work environment and pregnancy discrimination claim, and therefore fees are inappropriate. If, however, this court affirms on the merits, we still think that fees are inappropriate. I'd like to make three points about this and then rest on our brief for the rest of the issues. First, this court should find the district court abuses discretion because, as I said, as to three of the claimants, the district court itself found that our claim was non-frivolous. And since the EEOC has one claim of hostile work environment, that finding precludes an award of attorney's fees on our hostile work environment claim under Christiansburg. Is there a case that says that? That talks about sloughing up the pie. Right, exactly. I couldn't find one. I couldn't find one either, but it's the Commission's position in this case where there was a small employer, there was a single harasser, where a lot of the evidence overlapped because the women testified that these jokes were told to groups of them or they kind of heard the same comments, that it was especially inappropriate to kind of slice up the pie and say as to three of those victims. Well, that could get to another point, but as I understand it, though, the EEOC does not represent the individual. That's correct. And we think that the magistrate judge very succinctly laid this out in one of his opinions, which I think was 168 in the district court below, the docket number, where he said that we represent the public interest, so we come forward with a claim that there was a hostile work environment and that the victims are proof of our claim. I mean, certainly we are not representing individuals, so we're a very different position than being a private attorney representing private plaintiffs. So we contend there was error because the district court itself found that our hostile work environment claim had some merit, at least in its view, enough to overcome the Christiansburg standard. We also think it was inappropriate for the district court to award fees on what it considered to be our insufficient investigation and cause finding. These are matters within the discretion of the EEOC. To allow reason associates to challenge the EEOC's investigation and cause finding would invite this kind of challenge from every Title VII defendant. And so district courts would be having to litigate, have a mini-trial about our investigation and cause finding when any defects in that investigation and cause finding necessarily resurface in analysis of the merits of our case. So we think it's redundant and not a good use of time. And moreover, the EEOC's investigation and cause finding doesn't adjudicate any rights and liabilities, and it's all the more inappropriate to have rested the fee award on that. Third, the district court abused its discretion in awarding fees based on what it thought to be our inadequate conciliation. But under EEOC's versus Bruno's reference standard is whether we had a reasonable belief. We think that we did have a reasonable belief that the conciliation here was adequate. As we pointed out in our brief, although reason associates properly said that we did ask in our conciliation letter for twice as much money for claimant, they didn't point that out then, and they didn't come back with any kind of counteroffer or say that as a condition of participating in conciliation, they need to know the names or the numbers of people. And they didn't notify us when we sent the failure of conciliation letter in August and say, hey, you made a mistake here. We really are interested in engaging in conciliation. Let's give it a shot. I see that I have eight minutes left.  I'll save that my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. I'm David Gernick, representing the Robert Reeves Law Firm. The Reeves Firm is devoted over 20 years to representing and protecting the civil rights of immigrants. It's a firm with every nationality, every type of person that you can imagine, pregnant and non-pregnant, men and women, people of different sexual orientations. The irony of this case is that the EEOC would conduct itself with regard to a firm that has vindicated the civil rights of people for 20 years. Does that mean they're entitled to an exemption from Title VII? No exemption, Your Honor. No exemption. The first question for every federal case is jurisdiction. And my opponent talked about the failure to conciliate. Jurisdiction required first a good-faith conciliation, not just lip service or a facade. The District Court made the determination that the EEOC failed to conciliate. That's in the record, pages 581 to 583. The EEOC's investigator admitted, and it's in the record, that EEOC was not conciliating. Aside from Pierce-Packing, which is your best case? Pierce-Packing is the case, Your Honor. But there was no investigation of Pierce-Packing. The question is whether they engaged in conciliation. The statute requires a good-faith conciliation. Conciliation is a process of exchange of information, attempting to solve a problem, attempting to settle it and reach a solution. That requires more than a letter demanding double the statutory limit on damage, an investigator who says, we were not conciliating, and then if you don't accept the take-it-or-leave-it offer, the EEOC writes back and says, we're not conciliating, we're going to court. That's the process that Congress envisioned. And it isn't just conciliation, Your Honor. It's good faith. If we ignore the good faith... Where do you find that in Pierce-Packing? I find it in the statute. It says it has to be a good-faith conciliation, a process of exchange. EEOC, they would not identify who the claimants were. They wouldn't identify what the nature of the claims were. You cannot expect someone to settle a case, to problem-solve, if you won't describe what the problem is, if you won't describe who the complainants are, if you won't describe the nature of what's going on. It's a back-and-forth... I understand your argument, but I understand that we may be cutting new ground here, but there's no case that says that yet in the Ninth Circuit. Is there? If the court does not, if the court permits the take-it-or-leave-it letter, it is... I'm just asking about, I'm asking for authority, not your argument. Okay. If we allow the take-it-or-leave-it letter, and the refusal to disclose info about the claim, we're casting aside the good-faith element of the good-faith conciliation. With regard to the question of the number of claims on the pregnancy, Your Honor asked about whether there's a case that deals with the number of claims that the EEOC... Well, no. My question was, I realize that there are a number of different claimants here. My question was whether the EEOC has a single claim... Yes. ...with respect to its either pregnancy discrimination charge, although there were two women. Is it a... Because it's the EEOC, is it a single claim from the perspective of the EEOC? Yes, and there is a precedent. Judge Thomas was on the panel in the Bradley case where the Ninth Circuit said that we look at the claims separately when we're assessing the damage claimed as to each individual, and that's the precedent. But EEOC has taken different positions on this. And one time they say one claim in their brief, and today I heard my opponent say there's two claims, one for pregnancy and one for hostile environment. Right. And so there's been different ways of analyzing it. We're prepared to view it whichever way the Court prefers, whether we view this as one claim or one claim for each of the individuals. Well, and from my perspective, it only becomes critical when you get to the attorney's fees issue. Yes, Your Honor. And the Court below considered that issue and allocated the attorney fees, made a decision based on... Well, before we get to the attorney's fees, let's back up a minute. Tell me why, as a matter of law, that there were no genuine tribal issues of fact here on either the pregnancy discrimination claim or on the hostile work environment claim. Thank you, Your Honor. What Judge Trevisan said is there's no tribal issue of fact here. Yes. No genuine tribal issue of fact here, and that as a matter of law the defendants are entitled to judgment. Now, the EEOC just went over the evidence here, and it's pretty strong, at least enough maybe to get by a summary judgment motion. No, Your Honor. Why not? Tell me why. I want to hear from you. What the EEOC has done is taken several years of incidents in a law firm and compacted them into one presentation. But when Your Honor considers that this was several years of time, that there's no severe pervasive type of conduct going on, you will see what Judge Trevisan saw. I will start with the pregnancy claim. Two of the elements of that claim, one is that the EEOC had to show was that Ms. Saez was performing her job satisfactorily, and two, that similarly situated individuals were treated differently. Now, the only evidence before this court with regard to performance was her own self-serving statement that she thought she was performing satisfactorily. And there's numerous precedents that if the Aragon case, the Bradley case that Judge Thomas was on the panel of, and the Shuler case, that say the employee's own self-serving statement is not substantial evidence to establish satisfactory performance. That was the only evidence. There was clear unrefuted evidence that she was not performing satisfactorily. The supervisor unrefuted declaration that she refused to make photocopies. The other evidence that the position was temporary, that when hired, Ms. Saez had said she was planning to go to New York and that the purpose for her hiring was to pay off a legal fee bill because she had been a client. Those were not refuted. And there was unrefuted evidence she was not performing satisfactorily. So the evidence that she was not performing satisfactorily was the inability or refusal to make photocopies? The supervisor came in and the head of the firm complained, why are you working overtime? And the answer was, because Ms. Saez won't do photocopies, I'm doing her work overtime. You put that together, well, you're working overtime covering for her. Her position was temporary. She was going to New York and her legal fees were paid off. Those are the reasons, and they were not refuted. The only challenge to that is her own statement that she thinks she was performing satisfactorily, and the absence of any criticism in her employee file, which is not remarkable given that she had only been there a short period of time because it was a temporary position. Secondly, there had to be proof that similarly situated people were treated differently, and EEOC not only said that. Didn't the office manager testify she didn't know of Saez having refused to make copies? I'm talking about the Marcello deposition. Marcello was not the office manager, and this is part of the point we'd like the Court to be aware of. EEOC makes allegations and statements in the brief that are not accurate, and we pointed that out in a separate motion. Ms. Marcello was not an office manager.  Okay. Strike the office manager. She was a co-worker. So you had testimony from co-workers that said she was a good worker. That's insane. But that's different from saying that there's no evidence. Your Honor, the co-workers aren't in a position to evaluate performance, and to call that co-worker the office manager elevates this to an inaccurate level. Well, here's what we have in front of us. We can't settle any evidentiary disputes. The question is, drawing inferences in EEOC's favor, have they created a tribal issue? In fact, if we believe the co-workers that she was a good worker and had never been criticized for not making photocopies, why doesn't that create a tribal issue effect? Because there's a separate reason, which is that EEOC didn't even attempt to argue or show that similarly situated people had been treated differently. The brief is devoid of that essential element of the claim, that similarly situated people had been treated differently. In fact, the EEOC's only attempt was to assert that two other people had been terminated on pregnancy grounds. Those claims were dismissed and found to be frivolous. EEOC did not appeal. I think that colors the view of the entire case, that these were frivolous claims, and that's conclusive. Those findings as to the other two were not even appealed. So there's no evidence or argument before this Court on that critical element of this cause of action. That doesn't mean at the time of trial they wouldn't want to present evidence of those other incidents. Your Honor, it was a summary judgment because there was no evidence of that. No, no, no. I mean, if they were to get to trial on this particular claim, that doesn't mean that they wouldn't want to present evidence of what happened to the other individuals. I hear what Your Honor is saying, but they're not entirely sure. They may have decided for purposes of this appeal. They didn't think it was worth their time. And they may not even think it's worth their time to present a claim for money in the district court. That doesn't mean that they may not want to present evidence from these other people. I hear what Your Honor is saying, but they didn't make that argument. They didn't present the evidence. So that element is missing. I think it doesn't go to pretext, I mean, at the end of the day on an evaluation of the Sias claim.  The fact that they dropped the claims may or may not be relevant, but I think it may be relevant in terms of showing pretext. Your Honor, it doesn't go to pretext. It's a separate element that the Court has said is an element of a pregnancy discrimination claim. And there's no evidence of it. There's no argument of it. They didn't attempt to make that showing. I understand that you're arguing different prongs. I'm jumping ahead a little bit. What I'm talking about, and I understand your argument. I guess the argument is similar to the situation, is that non-pregnant people weren't terminated. That's what their contention is. Jumping into pretext, the question is whether or not the existence of other claims of other terminated pregnant people is enough to create a tribal issue effect on pretext. Now, tell me why that wouldn't be so. I'm sorry, Your Honor. The fact that there were other claims by EEC? Yes. Because those claims were found to be frivolous. They were found to be unreasonable. Who made that finding? The district judge made it. I thought this was a summary judgment motion. He made that finding both in the summary judgment and in the way they conducted the case, in the fact that there hadn't been an investigation. And in the summary judgment, there had been no evidence of a pregnancy. And that finding was not appealed from. That's conclusive, that those were frivolous claims. I don't think it's a conclusive finding. I mean, it's certainly a claim preclusion by those individuals or by the EEOC on the behalf of those individuals. Well, it hasn't been appealed from, Your Honor, but it does color the claim that the EEOC attempts to bring. Okay. Why don't you get to the hostile work environment, because your time is winding down. With regard to the hostile environment, Your Honor, first of all, when my opponent talks about Ms. Jacobson, the court needs to keep in mind what the district judge knew, which was that this claim had been engendered by two lawyers who had left the firm dramatically and were waging an attack on the firm. Ms. Jacobson was in a romantic relationship with one of those two lawyers. Ms. Jacobson, who my opponent talks about in such detail, she talked about jokes. Ms. Jacobson testified she repeated the jokes, and she found them to be funny, and she cracked up over them, as did the people she was repeating them to. Ms. Jacobson received hostas in the shape of penises. Sounds like good cross-examination material, but I think you better talk about the overall claim here in terms of why there's no tribal issue. I mean, I sat on Burrell, too, and objectively, looking at the situation in Burrell and this one, the facts, as alleged, are a little more significant here in terms of hostile work environment than were in Burrell. And Burrell reversed saying that there are tribal issues of fact. Tell me how the case is different. Your Honor, this is stretched out over time. There's the most that – Doesn't that hurt you rather than help you? I'm sorry, Your Honor? It doesn't hurt you rather than help you? If the testimony is it happens on a daily basis and is stretched over time, how does that help you? The testimony does not show it happened on a daily basis. The witnesses testified that over 24 months, I heard an average of one joke a month. Or a touching incident occurred once and never occurred again. Unlike any of the cases, Your Honors, have been involved in that I could find, or any of the cases that I found at all, not a single one of these claimants ever made a complaint. Not a single – and we have to find that this was both subjectively and objectively hostile, and there has to be evidence to make that finding. Not one of the purported claimants ever made a complaint to the law firm, and not one ever made a complaint to EEOC. Now, these are not people who are unable to make a complaint if they're feeling mistreated. These are lawyers, paralegals, legal secretaries in a law firm environment. The firm had a written policy that these employees signed. There were not just Mr. Reeves who someone could complain to, Mr. Hanlon, who was a named partner of the firm, the bookkeeper, harassment officer, Joyce Ms. Wang, and her predecessor. If there had been any – we can't find there to be subjective or objective hostility when not a single person has ever complained. The dividing line, I commend Your Honor – I call Your Honor's attention to the Baskerville decision, 50 F. 3rd 428, where the court said the dividing line is assaults, physical contacts that are serious and severe and pervasive, and yet on the lawful side are banter, tinged with sexual innuendo or comments. Those are not actionable. All we have in this case are things like a joke about Viagra when a candidate for President of the United States was on national TV making light of Viagra, a joke about Monica Lewinsky – that's what my opponent refers to as the cigar – the day after that was on Jay Leno, and every office in the nation people were telling those jokes. These are not severe types of statements to people. These are things that were going on throughout the nation. They were current events. With regard to the touchings that are alleged, they're one isolated incident as to Ms. Katerna, one isolated incident as to Ms. Wilkerson, and these are not sexually pervasive activities. There's a bump at a coffee machine. That's the incident. It never happened again. There's a pad on the back that, as the case went on, grew into a pad on the rear end. That never happened again, involving individuals who were not employed at the firm at the same time. So, well, consolidating that into one presentation or one brief creates a misimpression. Your honors need to consider that these are dilute incidents that take place intermittently over a period of time, and they're no more than remarks and these isolated incidents, and that's the reason that there's not a hostile environment here. With regard to the attorney fees, the court had two bases for awarding the attorney fees, both under Christian Berg, the statute itself, which said that the prevailing defendant is entitled to attorney fees in these type of circumstances, and under Section 1927, when a litigant multiplies the proceedings unnecessarily, and the district court pointed out that EEOC had failed to respond to discovery even after they were ordered to do so, had not disclosed the names of claimants even after being ordered to do so, and that was the case. Did the defendant move for discovery sanctions in the district court? The attorney fees at the end, and there were terminating sanctions as a result of EEOC's misconduct. But did you see during when there was a nonresponse that you said they failed to respond to discovery? We moved to compel. You moved to compel, and did you get a word of monetary sanctions? No, the sanctions were awarded at the end by way of attorney fees, Your Honor. But did you ask for attorneys' fees at the time you moved for discovery? I don't know the answer to that at the moment, Your Honor. I know the court considered that when it made its attorney fee motion at the end. And so those were the ones that were moved. So how did that multiply the proceedings? Because you have to go back after EEOC violates an order to turn over discovery. Then after they're denied their own discovery request, they create a fictitious Equal Pay Act claim, and using an Equal Pay Act claim, they ask for the same information that the magistrate judge just told them they're not entitled to. So the magistrate judge in a separate hearing has to sui sponte, order them that they can't pursue the Equal Pay Act claim. After they tell the Reid's lawyer that they're going to dismiss the BIDA and other purported claimants, and then they refuse to dismiss those claimants, and they walk outside the door after the hearing, after they just told the court they're going to dismiss the claimant, and they hand Mr. Wilder a letter saying, we've changed our mind, we're not dismissing that claimant, and force us to go and make another motion. After they refuse to stipulate to something, to an amended pleading, and force us to make a motion to file an amended pleading that they asked us to file. Throughout the process of this litigation, saying one thing, doing another. We're going to dismiss a claimant. We're not going to dismiss a claimant. And then at the end of the day, there's no evidence. It sounds more like it was an award of sanctions, the way you describe it. No, Your Honor. It was an award of attorney fees under Section 1927, as authorized by statute. Did the district court judge in its award of over $300,000 in attorney's fees, did he allocate money for this particular statutory basis? Yes, he did, Your Honor. The court recognized that although none of these claims had merit, the court said nine of the 12 were frivolous, and three of the 12, although they wouldn't withstand summary judgment, those were not frivolous. And so he made an allocation of 25% based on the three that weren't frivolous, and then he noticed that half of the work on those three also related to the other three, so he reduced the attorney's reward by 12.5%. So he made that allocation among the patently frivolous claims and those that didn't withstand summary judgment, but they weren't patently frivolous. So he discounted the attorney fees on that basis. That was very carefully explained in his order. Your time has expired unless there are further questions from the panel. And I realize we took up a lot of your time with our questioning, but that helps us in our analysis of the case. We do have the rest of your arguments in your briefing, yeah. So thank you. I'd like to briefly touch on a few points raised by my opponent, and the first is the contention that the comments or jokes were not actually something that were almost a daily occurrence. The record supports the commission's contention that they were. In the record excerpts at 261, Liao testified that, and I can read the testimony, how many jokes did he tell you? Answer, a lot. I didn't keep count of them. Question, what's a lot? What's a lot? Answer, at least once a day. Question, at least once a day since when? Answer, since when the time Viagra was introduced into the market. So that's the testimony as to Liao. As to Wilkerson in the record excerpts at 340, this is her amended supplemental response of interrogatory. She heard Mr. Rees make sexual comments daily. Jacobson, record excerpts at 350, Jacobson said Mr. Rees frequently came to her office to tell dirty jokes, and I think that their record is replete with a plethora of jokes and comments, as she recalls, that were inappropriate. We certainly think that Burrell supports our case. I was unable to find cases from this circuit that said that there was a quantifiable number of jokes or comments somebody had to hear before there was a jury question. The closest case I could find was only unpublished, which was Woods v. Champion Chevrolet, which was two sexual comments or sexual advances per month, and this court held that that was a jury question there. So we think that our evidence says that these were daily comments or jokes, and that was sufficient to raise a jury question. As to the pregnancy claim, again, the commission, as we put in our reply brief, the prima facie case can be stated by showing the fourth prong as circumstances giving rise to an inference discrimination, and we cited the Codd Lake case for that. And Rees and Associates claimed that the contrary is ironic, since it actually drafted the findings, the facts, and conclusions of law that the district court adopted. And the quotation from Bradley about the amount of evidence needed for pretext and whether a plaintiff's own assertions of that is sufficient is from pretext. It's not from showing that she's qualified. Right, but moving to pretext, you still have to survive pretext. And you can't survive a claim or you can't create a tribal issue pretext simply by repeating the evidence that you have, unless it's fairly powerful to establish the prima facie case. What else do you have on pretext, assuming for the moment they've established a legitimate non-discriminatory reason? And we get to the final stage. Well, Your Honor, their legitimate non-discriminatory reason, it seems to have shifted a bit. But their contention that we only hired her on a short-term basis to pay off her attorney's fees, the commission offered her evidence saying that wasn't my understanding. And in her personnel file, which is in the record, there's nothing that says she was hired on a short-term basis. Maria Marcello, who is the defendant's own witness, testified she didn't know anything about Saez having been hired on a short-term basis. Another assertion that Rees & Associates makes in its response brief is that she was hired to fill in for Romina Silva, who was out on maternity leave. But that doesn't make any sense, because in their record excerpt at 786, and this is a declaration of Anna Reyes that says, Christine Alasudia was hired on January 14th to fill in for Romina Silva. So even though they said it was Saez, they've given somebody else to do that work. And we offered the evidence disputing that she had the performance deficiencies for the short time period between when she disclosed her pregnancy and when she was fired. And I think Saez did a case to support the assertion that when someone is terminated without a precipitating event, that that can all give rise to pretext. And also we think that although we're not pursuing our claim up to Romina Silva, Rees' treatment of her is something else that the jury could consider when deciding whether the true reason for letting Ms. Saez go was pregnancy discrimination. So I think all that evidence is tied in, and that's enough to establish a genuine issue material fact as to pretext. We'd also just like to point out again that office manager is a term used by the district court in its opinion, which is in the record excerpts at 402 for how to refer to Maria Marcello. And there was some discussion about the investigation, if this court would like to hear about that. I can read a little bit from Ms. Barnes' deposition on this dispute about the amount of money. And what she testified to in the record excerpts at 170 is that we were initiating the conciliation process. That, and that meant identifying who was harmed, was something that we needed to talk about during conciliation. She said that letter is just to initiate the process to get a dialogue going. And she also testified that she had a phone call with Mr. Rees, and this is from 173 in the excerpts. What we said is once we identify who all the aggrieved individuals are, what we're seeking is $50,000 in compensatory and punitive damages. At 174, she says we weren't conciliating. We were asking them if they were interested in the conciliation process. And so it's our contention she recently believed that Rees & Associates wasn't interested in getting that dialogue going and that her testimony establishes that that is one thing that she knew they were going to talk about was the number of individuals. And as for motive, Rees & Associates has made much about Hanlon & Green having left the firm and being an ulterior motive and the commission was snookered. It's not unusual for a Title VII defendant to think that there was an ulterior motive. And in Swinton v. Potomac from this court, which is a case of racial harassment, the defendant made an allegation or the defendant's defense was that the plaintiff was sort of bent out of shape because his harasser's wife had made comments about him, the plaintiff, and his fiance. I think they were an interracial couple. So that doesn't negate our case, though. And, again, we think that motive is something that should go to the jury. It should be for the jury to consider. I think that that's all. Any further questions from the panel? Thank you for the presentation. Thank both of you for the presentation. And the case has adjourned. We'll be closing the commission.
judges: Hall, Thomas, Paez